UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WALKER,

                        Plaintiff,              Civil Action No. 18-cv-10298
                                                      Honorable Laurie J. Michelson
v.                                                        Magistrate Judge David R. Grand

MENARDS, INC.,
AND JEREMY STROKES

                        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS [23] AND DENY AS MOOT DEFENDANTS'
MOTION FOR SANCTIONS [22]**

*Pro se* Plaintiff Robert Walker ("Walker") brings this employment action under Title VII of the Civil Rights Act of 1964 against Defendant Menards, Inc. and its agent Jeremy Strokes[1] ("Jeremy") (collectively, "Menards" or "Defendants"). This case was referred to the undersigned for management, hearing, and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #12).

Presently before the Court are Menards' Motion for Sanctions (Doc. #22) and Motion to Dismiss (Doc. #23).

**I.    RECOMMENDATION**

For the reasons stated below, it is **RECOMMENDED** that Menards' Motion to Dismiss **(Doc. #23)** be **GRANTED,** Walker's complaint be **DISMISSED**, and that the Court **ISSUE AN**

---

[1] Although Walker named Jeremy Strokes in the complaint, Menards claims his proper name is Jeremy *Troke*, and his sworn affidavit reflects the name "Jeremy Troke." (*See* Docs. #1, #27-2). To avoid confusion, the Court will refer to him as "Jeremy."

1

**ORDER COMPELLING ARBITRATION** as to all of Walker's claims.  **IT IS FURTHER RECOMMENDED** that Menards' Motion for Sanctions **(Doc. #22)** be **DENIED AS MOOT**.

## II. REPORT

### A. Background

Walker alleges race discrimination and retaliation against his former employer, Menards, and its General Manager, Defendant Jeremy Strokes ("Jeremy").  Walker worked as a Building Materials Sales Team Member at Menards' Warren, Michigan retail store until April 28, 2017.  (Doc. #23 at 7-8).  Allegedly, several Menards employees made racist comments towards Walker, including instructing him to "go back to Africa."  (Doc. #1 at 11).  Walker claims he informed Jeremy of the racist remarks and harassment, and that Jeremy responded, "[Walker] complained to [sic] much about the racial comments … and he was tired of hearing the complaining about racism."  (*Id.* at 12).  After Walker arrived to work late "several times," due to "leaving school late and completing mandatory assignments," Walker's employment was terminated.  (*Id.* at 11).  Jeremy told Walker "that the tardiness was the legitimate reason he was going to use to terminate him from the job."  (*Id.* at 12).

On June 8, 2017, after the termination of his employment, Walker filed a charge of discrimination with the Equal Employment Opportunity Commission.  On December 1, 2017, the EEOC issued a Notice of Right to Sue.  Walker then filed his complaint in this Court on January 25, 2018, seeking $5,000,000 in compensatory damages and $5,000,000 in punitive damages for alleged violation of his rights under Title VII of the Civil Rights Act of 1964.  (Doc. #1).[2]

---

[2] Walker filed a "Response to Answer to Complaint" on May 29, 2018, in which he requests permission to amend his complaint to add a claim that in addition to being terminated on account of his race and in retaliation for complaints he made, he was also terminated on account of a medical condition, in violation of the Americans with Disabilities Act (the "ADA").  (Doc. #21 at 3, ¶ 6).  Given that the Court's recommendation herein to dismiss this action in favor of arbitration

The parties had a status conference on June 6, 2018, during which they agreed to engage in settlement discussions. Menards represents that it emailed a settlement offer to Walker on June 15, 2018, and the next day, "Walker sent a Facebook 'message' to Cardell Henderson, III, a current Menard employee and Walker's former co-worker… offer[ing] to pay Henderson for an affidavit claiming Henderson experienced race discrimination at the Warren, MI Menards store." (Doc. #22 at 6-7). Menards asserts that Walker also "admitted to offering a *female* witness money in exchange for her testimony," thus, Menards alleges, "Walker [] made an offer of money in exchange for testimony to at least two possible witnesses." (*Id.* at 7) (emphasis added).

Menards then filed its Motion for Sanctions on July 6, 2018, and its Motion to Dismiss on July 10, 2018. (Docs. #22, 23). In the Motion for Sanctions, Menards argues that Walker's case should be dismissed with prejudice as a sanction for alleged bad faith conduct, including witness tampering. (Doc. #22). In its Motion to Dismiss, Menards requested this Court dismiss the complaint and compel arbitration pursuant to an arbitration clause contained in the employment agreement between Walker and Menards. (Doc. #23). Walker filed one response to both motions on July 17, 2018. (Doc. #24). Substantively, however, the vast majority of Walker's response related to Menards' Motion for Sanctions. As to the Motion to Dismiss, Walker argued only that the arbitration agreement asserted by Menards should not be enforced because (1) Menards had not raised the arbitration agreement as part of the EEOC proceedings, and (2) Menards was only raising the arbitration agreement now "because [it does] not want the merit of this case to be decided by this court." (*Id.*). No replies were filed.

On September 11, 2018, the Court held a hearing on both of Menards' motions. Walker

---

would apply equally to a claim under the ADA, Walker's request to amend his complaint is moot and will be denied in a separate order.

3

did not raise any new issues regarding the arbitration agreement or its enforceability. After the hearing, the parties agreed to continue their efforts to resolve the case, and the Court advised that it would give them a brief period of time to do so before issuing its rulings on the motions. Six days later, however, Walker filed a motion to amend his response to Menards' motion to dismiss, which included new arguments as to why Menards' motion should be denied. (Doc. #26). Specifically, Walker asserted that he has a reading disability, and that because Menards knew of it when it hired him, it should not be able to enforce the arbitration agreement against him. Walker also asserted that Menards' arbitration agreement constitutes "discrimination" against employees whom the EEOC declines to represent in court. Menards filed a response to Walker's motion on October 19, 2018 (Doc. #27), and Walker filed a reply on November 2, 2018 (Doc. #28).

### B. Standard of Review

In its Motion to Dismiss, Menards moves to compel arbitration and to dismiss Walker's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act, ("FAA") 9 U.S.C. § 1, *et. seq.* Such a motion is construed as a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Multiband Corp. v. Block*, 2012 WL 1843261, at *5 (E.D. Mich., May 21, 2012); *MRI Scan Center, LLC v. National Imaging Associates, Inc.*, 2013 WL 1899689, at *2 (S.D. Fla., May 7, 2013) ("courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)."). "The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction." *Multiband*, *supra* at *5 (citing *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986)).

Under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). If it

is determined that a plaintiff's claims are subject to a valid arbitration provision, the district court no longer retains jurisdiction and the claims should be dismissed. *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1275 (6th Cir.1990).  Moreover, "it is well-established that any doubts regarding arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).  *See also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."); *Highlands Wellmont Health Network, Inc. v. John Deer Health Plan, Inc.,* 350 F.3d 568, 576-77 (6th Cir. 2003) ("When a contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'").

### C. Analysis

The Court first addresses Menards' Motion to Dismiss, in which it argues that the Court should dismiss this case and compel arbitration pursuant to the arbitration clause within its employment agreement with Walker.  (Docs. #23, #23-3).

#### i. The Arbitration Agreement

Walker does not dispute that his 2015 and 2016 Employee/Employer Agreements, both of which include the relevant arbitration clause, are attached to Menards' motion.  (Docs. #23-2, #23-3).  The 2015 Employee/Employer Agreement reads, in relevant part:

> **6. Remedy.**  I agree that all problems, claims and disputes experienced related to my employment area shall first be resolved as outlined in the Team Member Relations section of the "Grow with Menards Team Member Information Booklet" which I have received.  If I am unable to resolve the dispute by these means for any reason, I agree to submit to final and binding arbitration.  **Arbitration shall be the sole and exclusive forum and remedy**

> **for all covered disputes of either Menard, INC or me.** Unless Menard and I agree otherwise, any arbitration proceedings will take place in the county of my Menard's employment where the dispute arose. Problems, claims or disputes subject to binding arbitration include, but are not limited to: Title VII of the Civil Rights Act of 1964; Title I of the Civil Rights Act of 1991; Americans with Disabilities Act…
>
> These claims shall be resolved by binding arbitration with the American Arbitration Association ("AAA") … under its current version of the National Rules for the Resolution of Employment Disputes.
>
> \* \* \*
>
> Nothing in this Agreement infringes on my ability to file a claim or charge of discrimination with the U.S. Equal Employment Opportunity Commission, National Labor Relations Board or comparable state or local agencies. These agencies have the authority to carry out their statutory duties by investigating the charge, issuing a determination, filing a lawsuit in Federal or state court in their own name, or taking any other action authorized under these statutes. I understand that I have the right to participate in such action.
>
> \* \* \*
>
> THIS DOCUMENT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY BOTH MENARD, INC AND ME, THE PARTIES ALSO AGREE THAT BOTH I AND MENARD, INC. ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY… I HAVE READ THIS ENTIRE AGREEMENT AND I FULLY UNDERSTAND THE LIMITATIONS WHICH IT IMPOSES UPON ME, AND I UNDERSTAND THAT THIS AGREEMENT CANNOT BE MODIFIED EXCEPT BY THE PRESIDENT OF MENARD, INC.

(Doc. #23-2) (emphasis in original).

This agreement was signed by Walker on October 7, 2015. (*Id.*). The 2016 Employer/Employee Agreement, which Walker does not dispute receiving and reviewing electronically on July 15, 2016, via Menards' "Learning Management System," contained very similar language. (Doc. #23-3). In the relevant portion concerning remedies for individual claims[3], the 2016 Agreement includes the following slightly different language:

---

[3] The two agreements contained differing language regarding class action claims, which is not

6

>**6. Remedy.** I agree that all problems, claims and disputes experienced related to my employment may be resolved in one of the following ways: 1) I understand that I may bring a claim or charge of discrimination with the U.S. Equal Opportunity Commission… or comparable state or local agencies; 2) individual claims which are not a part of a class, collective or representative action **must** be resolved by binding arbitration.

(*Id.* at 3) (emphasis in original).

Menards contends that "Walker logged into the Menards Learning Management system on July 15, 2016 and electronically signed that the documents were read and agreed to." (Doc. #23 at 6). Walker does not contest that he opened the electronic document, nor does he contest that he read either the 2015 or 2016 Employee/Employer Agreement.[4] Instead, he argues that neither agreement should be enforced because he has a reading disability, and has a "very low comprehension level concerning documents." (Doc. #26 at 1-2). He further contends that he informed Jeremy of his reading disability, and Menards therefore should have provided him with

---

relevant here.

[4] One primary difference between the 2015 Employer/Employee Agreement and the 2016 version is the former is paper, whereas the latter is electronic. Although the 2016 electronic agreement included a blank signature line, there was no electronic signature required on the document itself, (unlike the 2015 version, which required a physical signature on the bottom of the document). The only affirmative act required to agree to the terms of the 2016 agreement was opening the document electronically. (*See* Doc. #23-3 at 2). The directions towards the top of the page entitled "Changes to Policies, Procedures and Agreements" instructed the following:

>Please read the below changes concerning some Menard, Inc. policies, procedures and agreements. By opening the [sic] reading this electronic document, you acknowledge your understanding and acceptance of the information below.

(Doc. #23-3 at 2).

Here, the Court need not determine what constituted agreement to the terms of the 2016 document, since Walker does not contest that he opened and viewed the document, nor that he signed the 2015 version, which includes an almost-identical arbitration clause. Thus, even if Walker could show that the 2016 agreement did not apply, it would not change the outcome here because, under either the 2015 or 2016 agreements' arbitration clauses, the analysis is the same.

7

assistance "to make sure he understood the complete application." (*Id.*).  In response, Menards denies it was aware Walker had any disability.  (Doc. #27 at 5).[5]  Menards further argues, "[e]ven if this Court were to find some issue with the enforceability of the Employee/Employer Agreement due to Walker's alleged disability, that issue must be settled by an arbitrator, not the district court." (*Id.* at 6).  For the following reasons, the Court agrees with Menards.

>  ii. **Because Walker Failed to Raise a Material Question of Fact about the Arbitration Agreement's Validity, this Case Should be Dismissed in Favor of Arbitration**

The Federal Arbitration Act, ("FAA") 9 U.S.C § 2, provides, in relevant part,

> [a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable....

(9 U.S.C § 2).

"The party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate"—a standard "mirror[ing] that required to withstand summary judgment in a civil suit."  *Great Earth Cos. v. Simons,* 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 129–30 (2d Cir.1997)).  The nonmoving party may challenge an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract."  *Rowan v. Brookdale Senior Living Communities, Inc.*, 647 F. App'x 607, 609 (6th Cir. 2016) (citing 9 U.S.C. § 2).  As noted above, however, "any doubts regarding

---

[5] Walker repeatedly asserts Menards was aware of his disability, and Menards presents an affidavit of Jeremy, in which he swears under oath that "Walker [ ] did not request any reasonable accommodations, either during the application process or his employment," nor did Walker provide medical documentation regarding accommodations required for reading. (Doc. #27-2 at 1). Ultimately, for the reasons discussed below, the Court need not resolve this factual dispute.

arbitrability must be resolved in favor of arbitration, because there is a strong presumption in favor of arbitration under the FAA." *Glazer*, 394 F.3d at 450; *Epic Sys.*, 138 S. Ct. at 1621.

To the extent Walker challenges the overall validity of his employment agreements (of which the arbitration clauses were a part) as a result of his alleged reading disability, that challenge lacks merit. "[W]hen parties commit to arbitrate contractual disputes, it is a mainstay of the [FAA's] substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" *Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012) (internal quotations and citations omitted).[6] In *Ewell v. Heath*, this Court held that the plaintiff's arguments as to the validity of the overall contract are to be considered by the arbitrator, not the court. *Ewell v. Heath*, No. 17-CV-11876, 2018 WL 460073, at *3 (E.D. Mich. Jan. 18, 2018). *Ewell* relied upon *Nitro-Lift Techs.* for the proposition that "district courts are only to consider the validity of the arbitration clause and not the contract as a whole." (*Id.* at *3). *Ewell* explained,

> In order to place the validity of the agreement to arbitrate in issue, therefore, the party opposing the petition to compel arbitration must state a 'well-founded claim of fraud in the inducement of the arbitration clause itself, *standing apart from the whole agreement*, that would provide grounds for the revocation of the agreement to arbitrate.' [I]f the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

*Ewell, supra* at *3 (quoting *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889-90 (6th Cir. 2002)) (emphasis in original).

---

[6] Similarly, Employment Rule 6 within the American Arbitration Association National Rules reads, "[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract." (*See* Doc. #27-4).

The Court agrees with Menards that Walker's argument here mirrors that of the plaintiff in *Ewell*, since Walker's competency argument challenges the employment agreement as a whole, and not "the validity of the arbitration clause itself." *Great Earth*, 288 F.3d at 889. *See also Buckeye Check Cashing, Inc.*, 546 U.S. 440, 449 (2006) ("regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Yaroma v. CashCall, Inc.*, 130 F.Supp.3d 1055, 1067-68 (E.D. Ky. 2015) (rejecting plaintiffs' arguments that the entire contract is void under state law, based on lack of capacity and unconscionability, explaining, "courts need not first determine the validity of the underlying contract in order to enforce a [ ] arbitration clause. [U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). Thus, Walker's argument about the employment agreement's overall validity should be decided in arbitration.

Moreover, even applying Walker's argument that he lacked the capacity to contract due to his alleged reading disability to the validity of the arbitration agreement itself, he cannot overcome Menards' instant motion. The recent Sixth Circuit case of *Rowan v. Brookdale*, 647 F. Appx. 607 (6th Cir. 2016), is instructive on this point. In *Rowan*, the plaintiff's father had suffered a stroke that diminished his physical and mental functioning, and he moved into an assisted-living facility operated by the defendant. One evening he wandered from the facility, fell, and was run over by a car, suffering serious injuries. The plaintiff sued the facility on his father's behalf, alleging negligence, gross negligence, and fraud. The facility moved to compel arbitration, citing an agreement the father signed when he moved in.

Plaintiff opposed arbitration, contesting the agreement's validity on grounds that his father lacked mental competence to contract. In support of that argument, plaintiff proffered that his

father had developed short-term memory problems after his stroke, that a doctor had diagnosed his father with limited insight/judgment, and that a factfinder could infer a lack of capacity to contract from the fact that his father had wandered away from the facility. Finding the plaintiff's evidence insufficient to raise a material question of fact about the arbitration agreement's validity, the district court granted the facility's motion to compel arbitration and dismissed the case.

On appeal, the Sixth Circuit affirmed. First, it noted the fairly high standard a party must meet to establish an incapacity to contract:

> To possess mental capacity to contract, Michigan law evaluates whether:
>
> [T]he person in question possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged. However, to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that the unsoundness or insanity was of such a character that he had no reasonable perception of the nature or terms of the contract.

*Id.* at 609 (6th Cir. 2016) (quoting *Howard v. Howard*, 134 Mich. App. 391, 396 (1984)).

Next, it analyzed the plaintiff's proffered evidence, finding it failed to meet the "no reasonable perception" standard, did not contain a doctor's assessment of competence, and amounted to nothing more than a "conclusory assertion that the circumstances of his father's injury evidence[d] [his] incapacity [to contract] [which] is insufficient to withstand summary judgment." *Id.* at 610.

*Rowan* seems on all fours with Walker's argument here. Walker worked at Menards for two years, and manually signed the 2015 Employer/Employee Agreement, which evidences an ability to read and understand the document at least at a basic level. He also used a computer to receive and review the 2016 Agreement. While Walker has provided evidence that he received an

11

Individualized Education Program ("IEP") as a high school student[7], that evidence is not an assessment of Walker's competence. Indeed, even the IEP on which Walker relies indicates that Walker does not have limited English proficiency. (Doc. #30 at 2). The IEP also states that Walker intended "to go to college after high school," and "will obtain employment in the area of: Business Degree / Sales Associate." (*Id.* at 3). Moreover, Walker has not submitted medical documentation (or even detailed factual allegations) which would support an impairment severe enough to satisfy Michigan's competency standard. In short, as in *Rowan*, Walker's conclusory assertion that his alleged reading disability rendered him incompetent to contract fails to raise a material question of fact as to the validity of the agreement overall, or the arbitration clause, in particular.

Walker does challenge the arbitration clause's validity in certain respects independent of his reading disability argument. However, none of those arguments has merit. In one of his briefs, Walker argues that the arbitration clause should not be enforced because "it creates a condition where the employee loses [his] right to file [his] complaint in a timely matter [sic] with the EEOC thus waiving the employee right to receive a right to sue letter in order to proceed to the Court." (Doc. #26 at 3). But this argument is contradicted by the fact that Walker did, in fact, file a complaint with the EEOC, and then, after receiving a right to sue letter, commenced litigation in this Court. The issue isn't that Walker could not file suit, but that he failed to show the arbitration clause itself was invalid. Moreover, the agreement explicitly states, "Nothing in this Agreement

---

[7] In advance of a telephonic call the Court held with Walker and counsel for Menards on October 9, 2018, Walker e-mailed to the Court a copy of his IEP from February 2014 when he was in 12th grade at South Lake High School. The Court mistakenly believed this document had been docketed around the same time as the call. However, because that is not the case, the Court docketed it (after having redacted certain personal identifying information) on today's date as Doc. #30.

infringes on my ability to file a claim or charge of discrimination with the [EEOC]." (Docs. #23-2, #23-3).

Walker also argues that it is "discrimination" to permit employees to waive arbitration if the EEOC files a lawsuit on their behalf, but not if the EEOC declines to do so, because "Menards cannot create a policy or contract that allows one employee to the [sic] file a claim in the Court if the EEOC file [sic] on their behalf and deny a employee who the EEOC do not [sic] file on their behalf the right to proceed to court with out requiring to participate in attribution[8] [sic]." (Doc. #26 at 4). But, as the U.S. Supreme Court held in *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citations omitted), "[b]ecause the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' [] we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." Moreover, Walker cites inapposite equal protection case law and the Black's Law Dictionary definition of discrimination; employees have no constitutional right to a lawsuit filed by the EEOC, and Menards and its individual employees were free to agree that in the event the EEOC did file an action on the employee's behalf, he could "participate in" that action notwithstanding the arbitration agreement's verbiage preventing the employee from filing his own claim in court. Again, the arbitration clause is simply part of the employment agreement that Menards and Walker agreed would govern their employer/employee relationship.

Next, despite Walker's argument to the contrary, the right to sue letter issued by the EEOC does not undermine his right to pursue arbitration. *See EEOC v. Frank's Nursery & Crafts, Inc.,*

---

[8] Walker writes "the language in their job application allow an employee to waive attribution If the EEOC file a lawsuit on their behalf in the court. It is Plaintiff [sic] contention that is discrimination." (Doc. #26 at 3-4). While Walker misspells "arbitration" throughout his reply brief, his findings make clear that he understands the general concept of arbitration and the impact that the inclusion of an arbitration clause in his employment agreement has on his claims.

13

177 F.3d 448, 462 (6th Cir. 1999) (explaining the effect on an employee's rights when he or she receives a "right to sue" letter from the EEOC compared with when the EEOC pursues claims on his or her behalf) ("[I]f an individual subject to an arbitration agreement filed a charge with the EEOC and ultimately received a 'right to sue' letter, that individual would have a private cause of action that she waived by her prospective agreement to arbitrate."). Any potential timing issues that might exist in connection with an arbitration action that Walker wishes to bring are of his own making as he elected to proceed initially through the EEOC and then in this Court, rather than immediately commencing an arbitration action as his employment agreement required.

In sum, Walker's arguments that the employment agreement and/or the arbitration agreements contained therein are unenforceable lack merit.

Of course, in order to compel arbitration, the Court must determine that the arbitration clause *itself* is valid, and that Walker's claims are contained within the scope of such clause. "When considering a motion to [] compel arbitration under [the Federal Arbitration Act], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000)).

Analysis of these factors shows that arbitration of Walker's claims should be compelled in this case. First, there is no dispute that Walker manually signed the 2015 Agreement, and electronically reviewed, and therefore, under its terms, agreed to, the 2016 Agreement. This is

14

objective evidence of an agreement to arbitrate. As to the second *Glazer* factor, the parties do not dispute that the 2015 and 2016 Agreements provided that claims related to Walker's employment with Menards were required to be resolved by "binding arbitration." *See supra* at 5-7. Clearly this encompasses claims arising under Title VII of the Civil Rights Act of 1964, which is the basis for Walker's instant suit.[9] Regarding the third factor, neither party sets forth any indication that Congress intended to exclude a Title VII claim from arbitration. Finally, there are not any non-arbitrable claims.[10] Accordingly, dismissal is appropriate, rather than a stay of proceedings.

Finally, Walker's argument that because Menards drafted the arbitration agreement in a way favorable to Menards, it should be construed against Menards, lacks merit. (Doc. #26 at 2, ¶ 3). The legal principle on which Walker appears to rely – *contra proferentem* – applies only where the contract in question is ambiguous. *Keeth v. State Farm Fire & Cas. Co.*, No. 1:11-CV-141, 2012 WL 13018745, at *5 (W.D. Mich. Mar. 29, 2012) ("Where the contract is ambiguous, the ambiguity must be construed against the drafter of the contract, but only if 'all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have left the jury unable to determine what the parties intended their contract to mean.'") (citations omitted). *See also NILAC Int'l Mktg. Grp. v. Ameritech Servs., Inc.*, 362 F.3d 354, 359 (6th Cir. 2004)

---

[9] Equally clear is that it would encompass Walker's proposed amended claim that he was fired in violation of the ADA.

[10] As to Defendant Jeremy, the Court notes that agents are afforded the benefits of arbitration agreements made by their principals. *See Arnold v. Arnold Corp.-Printed Commc'ns For Bus.*, 920 F.2d 1269, 1282 (6th Cir. 1990) ("We therefore will follow the well-settled principle affording agents the benefits of arbitration agreements made by their principal and affirm the district court's decision on this issue."); *Altobelli v. Hartmann*, 499 Mich. 284, 299 (2016) (holding "agency principles apply in determining who is included within the scope of the arbitration clause."). Accordingly, for the same reasons that Walker's claims against Menards should be dismissed in favor of arbitration, so too should his claims against Jeremy be dismissed.

15

("ambiguities are to be construed against the drafter of the contract")). The principle does not apply here because the arbitration clause in question is clear and unambiguous.

For all of the foregoing reasons, the Court should grant Menards' motion to dismiss (Doc. #23), dismiss Walker's complaint in its entirety, and issue an order compelling arbitration as to all of Walker's claims. In light of this recommendation, the Court need not delve into the merits of Menards' Motion for Sanctions (Doc. #22). Accordingly, that motion should be denied as moot.

### III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Menards' Motion to Dismiss **(Doc. #23)** be **GRANTED**, Walker's complaint be **DISMISSED**, and that the Court **ISSUE AN ORDER COMPELLING ARBITRATION** as to all of Walker's claims. **IT IS FURTHER RECOMMENDED** that Menards' Motion for Sanctions **(Doc. #22)** be **DENIED AS MOOT**.

Dated: December 6, 2018  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931

16

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

*Note these additional requirements at the direction of Judge Michelson:*

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 6, 2018.

                                                 s/Eddrey O. Butts
                                                 EDDREY O. BUTTS
                                                 Case Manager